414 A.2d 1080

**Ray KAISER and Kaiser Associates, Inc.**

v.

**Henry MEINZER, J. Walter Gallagher, Commonwealth Land Title Insurance Company, Commonwealth Development and Construction Company, Chemical Bank, and National Union Fire Insurance Company of Pittsburgh, and George Hyman, Additional Defendant.**

**Appeal of COMMONWEALTH DEVELOPMENT AND CONSTRUCTION COMPANY.**

**Appeal of Ray KAISER and Kaiser Associates, Inc.**

Superior Court of Pennsylvania.

Argued June 6, 1979.

Filed Nov. 27, 1979.

209

Mitchell S. Greenspan, Philadelphia, for appellant.

Neil E. Jokelson and with him Arnold Machles, Philadelphia, for appellee, Kaiser.

David A. Saltzburg, Philadelphia, did not submit a brief on behalf of appellee, Meinzer.

Ellis Cook, Philadelphia, did not submit a brief on behalf of appellee, Gallagher.

Charles I. Richman, Philadelphia, did not submit a brief on behalf of Commonwealth Land Title, appellee.

John G. Harkins, Jr., Philadelphia, did not submit a brief on behalf of Chemical Bank, appellee.

John Swartz, Philadelphia, did not submit a brief on behalf of National Union, appellee.

Frederick Gitterman, Philadelphia, did not submit a brief on behalf of Jack Arnold, appellee.

Before PRICE, GATES and DOWLING, JJ.

PRICE, Judge:

The instant appeals present the issue of the effect of a trial court's action in ordering a bifurcated trial and the duties imposed upon the parties once the first phase of the trial is completed. On March 27, 1978, Judge Stanley Greenberg of the Court of Common Pleas of Philadelphia County entered an order after completion of a non-jury trial on one count of plaintiffs' three count complaint, and held that plaintiffs could not recover on a promissory note executed by Commonwealth Development and Construction Company (Development) on the grounds of usury. This conclusion was affirmed in an order by Judge Greenberg on May 15, 1978. Besides affirming the earlier decision, Judge Greenberg ruled in his May 15 order that his earlier decision was interlocutory, but that plaintiffs, Ray Kaiser and Kaiser Associates, Inc. (Kaiser), could appeal the decision under the Act of July 31, 1970, P.L. 673, art. V, § 501, 17 P.S. § 211.501(b) (Supp.1978–79). Both parties have appealed from the May 15, 1978 order. Kaiser, the appellant at No. 1789, challenges the merits of Judge Greenberg's order finding Kaiser's claim barred on the grounds of usury.[1] Development, the appellant at No. 1741, challenges that

---

1. Defendant Chemical Bank also filed a brief at No. 1789 supporting the conclusion of Judge Greenberg that the Kaiser claim was unenforceable on the grounds of usury.

portion of the May 15 order that granted Kaiser permission to appeal. For the reasons stated herein, we affirm in part, reverse in part, and remand to the trial court.

The background of these appeals involves a very complex series of transactions involving individuals and corporate entities in two states and real property in a third. Stated as succinctly as possible, the pertinent facts are these. On October 4, 1972, Kaiser, a New York corporation, and Development, a corporation organized under the laws of this Commonwealth, entered into a loan transaction whereby Kaiser extended a loan of $100,000 to Development. As security for the loan, Development gave a promissory note and a third mortgage on property held by Development in Minnesota. Defendant, Chemical Bank (Chemical) held the second mortgage on Development's Minnesota property.[2]

Development failed to satisfy its obligation to Kaiser, its only effort in this respect being a $7,000 payment on May 4, 1973. Apparently, Development was also delinquent in its obligation to Chemical Bank, and on November 1, 1974, Chemical commenced a foreclosure action on the Minnesota property. Under Minnesota law, a servient interest holder can prevent the forced sale of property if within six months of the foreclosure order the servient holder files a Notice of Intent to Redeem and subsequently satisfies the interests of the foreclosing lienholder and all lienholders superior to the redeeming holder. See Minn.Stat.Ann. § 580.24. On April 22, 1975, Kaiser filed a Notice of Intent to Redeem. On or about that date, Kaiser and Chemical Bank allegedly entered into an agreement under the following terms: (1) Chemical would grant an extension beyond the six months for Kaiser to redeem the superior interests in the Minnesota property; (2) Kaiser would arrange for Development to

2. Although the record is unclear, Kaiser alleges in its complaint that the Minnesota property had a value in excess of $3,000,000. The priority and amount of the mortgage interests in the property were as follows:
   1. Banker's Life and Casualty Company—$32,946.95
   2. Chemical Bank—$393,692.98
   3. Kaiser—$100,000
   4 & 5. Allstate Bond and Mortgage Company—$250,000.

secure financing to satisfy the first and second mortgages; and (3) if financing could not be arranged and Chemical secured title to the Minnesota property, Chemical would grant Kaiser the exclusive right to develop the property for a period of two years. Apparently, the notice of Chemical's consent to the extension beyond six months was not transmitted to the proper clerk in Minnesota, and at or about the beginning of May 1975, Chemical Bank was granted title to the Minnesota property.

Chemical then entered into an agreement with Development to reconvey the property back to it for a consideration of $1,700,000. Chemical advanced the purchase money to Development, and National Union Fire Insurance Company of Pittsburgh (National) acted as surety on Development's obligation. The first and second mortgages were apparently satisfied, and an additional $550,000 of the loan was placed in escrow with the Commonwealth Land Title Insurance Company as security for the payment of the third, fourth and fifth mortgages. The fourth and fifth mortgages, totalling $250,000, were also satisfied leaving $300,000 remaining in escrow. National and Chemical Bank acquired new first and second mortgages respectively.[3]

In August of 1975, Kaiser initiated suit. After two amendments, the final complaint involved all of the above named corporate entities along with various agents.[4] The complaint was in three counts. The first alleged that Development and Chemical Bank had conspired to prevent Kaiser from fulfilling its agreement with Chemical to develop the Minnesota property if the latter acquired title. The complaint prayed for relief in the form of an order declaring,

3. The summary of the transactions in this and the preceding paragraph were distilled from the pleadings of the various parties. These aspects of the case were not presented to the trial court, and our summary should not be construed in any way as conclusive findings regarding these transactions. Such determinations are properly reserved for proceedings before the trial court.

4. Plaintiffs initially filed suit as an equity action, but the case was transferred to the law side of the court on December 16, 1975, on the basis that Kaiser had an adequate remedy at law.

*inter alia,* Development as a trustee of the property for the benefit of Kaiser, requiring Development to deed the property over to Kaiser and requiring Chemical Bank and National to remove their encumbrances, or in the alternative, compelling all three parties to pay Kaiser the market value of the property, to wit, $3,069,000. The second count was directed against Chemical Bank and Commonwealth Land Title Insurance Company. It requested, *inter alia,* that Commonwealth Land Title Insurance Company be ordered to pay Kaiser from the remaining escrow fund of $300,000 the value of the $100,000 mortgage interest, which by then had appreciated with interest, penalties, legal fees and various other charges to the sum of $260,862.32. The final count was against Development for default on the promissory note and requested a judgment of $180,083.29, which represented the original loan of $100,000 plus interest and penalty.

On May 3, 1977, Judge Greenberg issued a pre-trial order stating that due to the complexity of the case "[t]hat portion of the case which involves the claim of Plaintiff for money due, shall be tried first, it being clear that a determination on this issue is essential to a proper disposition of the other issues involved." On October 24 and 25, 1977, a non-jury was held on Kaiser's claim under count three of the complaint; the only parties participating in the trial were Kaiser and Development. At the completion of the trial, the court filed an opinion on March 27, 1978, to the effect that Kaiser could not recover on the promissory note. In its opinion the court reasoned that: (1) the law of New York was applicable to the claim;[5] and (2) that under New York law the loan transaction was usurious and therefore unen-

5. Judge Greenberg followed the Restatement (Second) of Conflicts of Law § 188 and § 203 (1971), that the law of the forum with the "most significant relationship" governs the outcome of the controversy. In so ruling, the court rejected Kaiser's claim that the "most significant relationship" test applied only in personal injury actions and was inapplicable in contract actions which should be governed by the law of the forum in which the contract was consummated (*i. e.* Pennsylvania). By reason of the nature of our disposition of the appeals, we will not address the propriety of Judge Greenberg's ruling.

forceable.[6]   Kaiser failed to file exceptions to the findings of the court, and on April 18, 1978, Development filed a praecipe for entry of judgment.   On May 9, 1978, Kaiser filed a motion to strike the judgment.   By order dated May 15, 1978, Judge Greenberg granted Kaiser's motion to strike and amended his opinion of March 27, 1978, to conclude that the issues addressed in that decision were interlocutory, but because they involved a controlling question of law as to which there was substantial difference of opinion and because an immediate appeal might advance the final determi-

---

**6.**   The loan of $100,000 was for a term of ninety days at an annual rate of interest of 24%.   If payment was not received at the end of ninety days, Kaiser was required to pay an additional interest penalty of one-half of one percent ($\frac{1}{2}$%) per month until the loan was repaid. Moreover, Kaiser was required to pay an "organization" fee of $3000 to Development as a condition for receiving the loan.

Under New York's General Obligation Law, Section 5–521, corporations are generally precluded from interposing the defense of usury.   An exception exists under Section 5–521(3) for cases of criminal usury, which under section 190.40 of the New York Penal Law is defined as "a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period."

Applying New York law, Judge Greenberg determined that the penalty provision of $\frac{1}{2}$% per month is not included in the computation of interest.   See Heelan v. Security National Bank, 73 Misc.2d 1004, 343 N.Y.S.2d 417 (1973).   However, the court did find that the $3,000 "organization" fee was not reasonably related to defraying Development's expenses in placing the loan and was merely a facade to conceal an additional interest charge.   See Benton v. Sun Industries, Inc., 277 App.Div. 46, 97 N.Y.S.2d 736 (1950); Brown v. Robinson, 224 N.Y. 301, 120 N.E. 694 (1918).   Therefore, the $3,000 fee was included in the interest computation.   For some unexplained reason, the court pro rated the $3,000 fee over the course of a full year.

The computation by the court was as follows:

| | |
|---|---|
| 100,000 at an annual rate of 24% | = 24,000 |
| organization fee | = 3,000 |
| Total charges | 27,000 |

Because the total charges on a yearly basis were $27,000, and the loan was $100,000, the effective interest rate was 27%, or 2% over the rate for criminal usury.   The rate being usurious, the court reasoned that under New York law the loan agreement is void and completely unenforceable, and Development is precluded from collecting either the principal of $100,000 or any rate of interest.   See Grushkin v. Feinberg, 161 Misc. 657, 292 N.Y.S. 631 (1936).   As in note 5, supra, our disposition of these appeals does not necessitate a ruling regarding the correctness of Judge Greenberg's analysis.

nation of the matter, Kaiser would be permitted to appeal the decision to this court. *See* Act of July 31, 1970, *supra,* 17 P.S. § 211.501(b) (Supp.1978–79). Finally, Judge Greenberg ruled that because the March 27 decision was an appealable interlocutory decision, Kaiser need not file exceptions to preserve the issues for appellate review.

Both parties have appealed from the May 15, 1978 order. Development has appealed at number 1741 asserting that the appeal should be quashed because Kaiser failed to file exceptions to Judge Greenberg's decision of March 27, 1978.[7] *See Blake v. Mayo Nursing and Convalescent Home, Inc.,* 245 Pa.Super. 274, 369 A.2d 400 (1976); *Lundvall v. Camp Hill School District,* 25 Pa.Cmwlth. 248, 362 A.2d 482 (1976); Pa.R.C.P. No. 1038(d). Kaiser has appealed at number 1789 challenging the merits of Judge Greenberg's decision that the law of New York applied to the instant proceeding and that Development could not recover on the usurious promissory note.[8] On April 27, 1979, the cases were consolidated for appeal. On appeal, the relevant issues that must be addressed are as follows: (1) was Judge Greenberg's decision on March 27 and his order on May 15, 1978, final orders from which Kaiser may appeal;[9] (2) has Kaiser waived the issues decided in the March 27 opinion by failing to file exceptions; (3) if not a final appealable decision, was it an appealable interlocutory decision; and (4) if appealable, was Judge

7. On April 27, 1979, we remanded the appeal at No. 1741 to the trial court for the preparation of an opinion pursuant to Pa.R.A.P. 1925(a). *See Kaiser v. Meinzer,* 265 Pa.Super. 595, 402 A.2d 705 (1979).

8. On December 12, 1978, Development filed a petition requesting that the appeal at number 1789 be quashed, that the May 15, 1978 order to strike be reversed, and that the judgment of April 18, 1978 be reinstated. That petition was denied on January 25, 1979, and the appeal at No. 1789 permitted.

9. In their briefs submitted to this court both Kaiser and Development primarily address the finality and appealability of the March 27 decision. We note that a direct appeal from that decision would have been premature. Instead, the appeal is more precisely from Judge Greenberg's order of May 15, 1978. Because, however, the May 15 order incorporated and affirmed the decision of March 27, we deem the issue of the appealability of conclusions in that decision properly before this court.

Greenberg correct in ruling that New York law applied and that under New York law the promissory note was usurious and unenforceable. Finding that they were neither final orders nor appealable interlocutory orders, we affirm in part Development's appeal at number 1741, quash Kaiser's appeal at number 1789 and remand to the trial court for further proceedings.

I

First, although not raised by either party, we note that Judge Greenberg's pre-trial order did not effect a severance of Kaiser's claim under count three of its complaint from the other causes of action. The rule in this Commonwealth is that a judge invested with the responsibilities of trial may on his own motion order a separate trial on any claim or issue if the resolution of that claim or issue will expedite the adjudication of other claims. *See* Pa.R.C.P. No. 213(b). Trial judges may also sever causes of action, *cf. Hamilton v. Gallo*, 233 Pa.Super. 476, 334 A.2d 692 (1975), and a severance of actions effects a splitting of them into one or more independent actions for all purposes, including trial and appellate procedure. *See Fisher v. Diehl*, 156 Pa.Super. 476, 40 A.2d 912 (1945); *McSherry v. O'Toole*, 25 Somerset L.J. 81 (1970); 1A Anderson Pennsylvania Civil Practice, § 213.35 (1976). After reviewing the record, we cannot conclude that Judge Greenberg intended by his pre-trial order to effect a severance of Kaiser's third count from the other actions, and his order of May 15, 1978, declaring the issues to be interlocutory supports a conclusion that severance was not intended. Moreover, a severance of actions should not be presumed absent specific language, particularly since the actions were brought pursuant to Pa.R. C.P. No. 2229(b) which permits joinder of diverse claims. To assume a severance based upon an ambiguous pre-trial order would undermine Kaiser's intent in bringing a single complaint under Pa.R.C.P. No. 2229(b).

Development argues, however, that because the practical effect of Judge Greenberg's May 15 order was to

terminate Kaiser's claim for relief under count three, it was in essence a "final order," and that Kaiser waived the issues by failing to file exceptions as mandated by Pa.R.C.P. No. 1038(d). We disagree with Development and conclude that Judge Greenberg's decision of March 27, and his order of May 15, 1978 were interlocutory, and not final.

In accordance with the Appellate Court Jurisdiction Act in effect at the time of the instant appeals, this court has jurisdiction over "all appeals from *final orders* of the courts of common pleas . . . ." Act of July 31, 1970, P.L. 673, art. III, § 302, 17 P.S. § 211.302 (Supp.1978–79) (emphasis added). *See* 42 Pa.C.S. § 742 (eff. June 21, 1978).

> "In ascertaining what is a 'final order,' we have looked beyond the technical effect of the adjudication to its practical ramifications. *Bell v. Consumer Discount Company*, 465 Pa. 225, 348 A.2d 734 (1975). We have variously defined a final order as one which ends the litigation, or alternatively disposes of the entire case. *Piltzer v. Independence Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974); *James Banda Inc. v. Virginia Manor Apartments, Inc.*, 451 Pa. 408, 409, 303 A.2d 925, 926 (1973). Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant 'out of court.' *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 463, 246 A.2d 353, 355 (1968). In *Marino Estate*, 440 Pa. 492, 494, 269 A.2d 645, 646 (1969), we said that an order is not interlocutory if it precludes a party from presenting the merits of his claim to the lower court." *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 337, 372 A.2d 721, 724 (1977).

In *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975), the Pennsylvania Supreme Court observed that

> "[w]hether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. We follow the reasoning of the United States Supreme

Court that a finding of finality must be the result of a practical rather than a technical construction. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)." (footnote omitted).

Development argues that applying the above tests, the trial court's decision of March 27 as affirmed in its order of May 15, 1978, was final and appealable. We conclude that Development's analysis of Judge Greenberg's decision is myopic and fails to recognize the "practical ramifications" of that decision.

If Kaiser's action on the promissory note was the only claim for recovery that had been pleaded, we would have no problem in concluding that Judge Greenberg's decision on that claim was final as it put Kaiser out of court and precluded its recovery on the note. However, Kaiser's action on the promissory note was only one phase of the entire proceedings against the defendants. Moreover, to characterize the May 15 order as "final" and permit an immediate appeal would permit the type of severance and piecemeal resolution of issues that has heretofore been condemned. *See, e. g., Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). Judicial economy and common sense require the maintenance of interrelated claims in one proceeding and in one appeal. Indeed, an anomalous result would be achieved if an appeal were permitted and Development's claim accepted that Kaiser waived the issues in the March 27 decision by failing to file exceptions. In that case, any errors in the March 27 decision and the May 15 order would be irreparable as applied to Kaiser's claim for recovery under count three, yet could be corrected and properly applied to counts one and two. We do not believe that the rules of civil or appellate procedure were intended to produce such results. Accordingly, we conclude that the May 15 order of the trial court was not a final appealable order on count three, but was merely an order relating to a preliminary proceeding in the resolution of all of Kaiser's claims. We therefore do not have jurisdiction to determine the merits of the controversy at appeal number 1789.

## II

The second issue is whether Kaiser waived the issues in Judge Greenberg's March 27 decision by failing to file exceptions. Because the March 27 decision and May 15 order were not final, Kaiser was not required to file exceptions to the issues addressed therein and may await the completion of trial on all aspects of the controversy.

## III

Next, we must determine if this court should accept jurisdiction of the interlocutory appeal at number 1789 on the basis of Judge Greenberg's certification that his decision regarding Kaiser's claim under count three "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the matter . . . ." Act of July 31, 1970, *supra*, 17 P.S. § 211.501(b) (Supp.1978–79). *See* 42 Pa.C.S. § 702(b). This we decline to do.

The purpose of the interlocutory procedure rule of § 501(b) is to secure immediate appellate review of issues upon which there are diverse opinions when the issues may effect the outcome of a subsequent proceeding. It is not designed, however, to encourage or authorize the wholesale appeal of difficult issues when appellate review would be better served by having all issues that are raised in a trial initially reviewed by the trial court. Thus, in *Carabello Appeal*, 238 Pa.Super. 479, 357 A.2d 628 (1976), we followed the mandate of § 501(b) when the petitioner challenged the subpoena issuing process of an investigating grand jury. An immediate appellate review of that process was deemed necessary to permit the grand jury to rectify the deficiencies, if any, and to continue with the completion of its important responsibilities. In *Miller v. Krug*, 255 Pa.Super. 39, 386 A.2d 124 (1978), we were confronted with a certified interlocutory appeal from an order of the trial court that had the effect of prohibiting the petitioner's expert medical witness from testifying at trial. In refusing to address the merits of the certified issues we stated,

"To be sure, some time would be saved . . . if we were to decide now whether the expert should be allowed to testify, but that may be said of any interlocutory ruling that may potentially be reversed on direct appeal. We cannot see a distinction between the particular order here, barring the expert, and many other pretrial orders on discovery, or rulings during trial on the admissibility of evidence." *Id.*, 255 Pa.Super. at 45, 386 A.2d at 127.

Instantly, we decline to address the issues raised in the appeal at No. 1789 for the reason that the questions fail to fit within the requirements for an interlocutory appeal under § 501(b). Particularly, we are not convinced that the certified questions involve "a controlling question of law" or that immediate appellate review will "materially advance the ultimate termination of the matter." In this respect, we note that the remaining counts may be governed by the law of a jurisdiction other than New York, especially since the property involved in count one is located in Minnesota. Moreover, even if New York law is applicable and the promissory note is usurious, the defense of usury may be waived, and a conveyance of property subject to a usurious mortgage may constitute such a waiver. *See Howard v. Kirkpatrick*, 263 App.Div. 776, 31 N.Y.S.2d 182 (1941); *Fitzsimmons v. Roberts*, 237 App.Div. 467, 261 N.Y.S. 457 (1933). Accordingly, we believe that judicial economy and the proper roles of trial and appellate courts would be best served by delaying our review pending the completion of all phases of the case in the court of common pleas. Therefore, the interlocutory appeal at number 1789 is quashed as improvidently granted.

## IV

Because of our resolution of the issues in parts I and III of this opinion, we need not address the merits of Judge Greenberg's March 27, 1978 decision, but will instead await the completion of all phases of the controversy in the trial courts.

Accordingly, we affirm Judge Greenberg's order of May 15, 1978, classifying the issues addressed in the March 27 decision as interlocutory, but pursuant to our discretionary power do not accept that portion of the May 15 order certifying the issues for appellate review. The case is therefore remanded to the trial court for further proceedings on Kaiser's claims under counts one and two of the complaint.